STATE, Respondent, v. LAABS, Appellant.*

*No. State 12.   Argued September 6, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 249.)

* Motion for rehearing denied, without costs, on November 26, 1968.

164

For the appellant there was a brief by *Nikolay, Jensen & Scott* of Colby, and oral argument by *Frank L. Nikolay*.

For the respondent the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *Norman L. Saracoff*, district attorney of Clark county.

CONNOR T. HANSEN, J.   The defendant and his brother were charged with the same offense.  At the conclusion of the state's case, the trial court granted a motion to dismiss the action against the brother but denied a motion to dismiss the case against the defendant.  The defendant was secretary-treasurer of both Laabs Dairy Company and the Laabs Cheese Company.  Dairy plants must be licensed by the Wisconsin Department of Agriculture.  Licensing is an annual procedure and sec. 100.06 (2), Stats., requires each license application to be accom-

panied by a sworn statement of the business operation and financial condition of the applicant.

The licenses for the two companies expired August 31, 1965, and prior to that date applications were filed with the Wisconsin Department of Agriculture for relicensing. The applications were supported by the required financial statements of conditions as of May 31, 1965. The statements reflected the corporations to be in good financial condition and accordingly licenses were issued.

The statements were executed by the defendant, as secretary-treasurer of the two companies, before a notary public, on August 24, 1965.

Later it was determined that the financial statements submitted with the applications for license renewals overstated the inventories and accounts receivable in an amount in excess of $80,000. Both corporations went into bankruptcy in March, 1966.

This appeal presents five issues:

1. Did the trial court abuse its discretion in denying the defendant's motion for a change of venue, and was the defendant denied a fair trial by an impartial jury?

On March 2, 1967, four days before the trial, the defendant moved for a change of venue alleging community prejudice was engendered by the closing of defendant's plants and other dairy plants in Clark county and because of publicity concerning the closing of the Laabs plants. The trial date had been set for several months and the trial court, though noting the untimeliness of the motion, considered it upon the merits. After a full hearing, the trial court denied the motion for change of venue and did so conditionally, allowing renewal of the motion if the *voir dire* examination of the jury panel demonstrated that the defendant could not receive a fair trial.

A motion for change of venue because of community prejudice is addressed to the discretion of the trial court.

Sec. 956.03 (3), Stats.[2] This court will not interfere unless an abuse of discretion is demonstrated. *Miller v. State* (1967), 35 Wis. 2d 777, 151 N. W. 2d 688; *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. 2d 803; *Schroeder v. State* (1936), 222 Wis. 251, 267 N. W. 899; *State v. Smith* (1930), 201 Wis. 8, 229 N. W. 51; *Krueger v. State* (1920), 171 Wis. 566, 177 N. W. 917.

We have examined the record and conclude that the trial court did not abuse its discretion in denying the motion for change of venue.

The criminal action against the defendant was commenced June 1, 1966, and the defendant was arraigned on September 6, 1966. The trial was in March, 1967.

The motion for change of venue was supported by 17 newspaper clippings. The dates of the publication of the articles range from April 22, 1964 (nearly three years before the trial) to November 14, 1966 (nearly four months before the trial). The articles are all general in nature and concern the closing of the Laabs plants as well as other dairy plants in Clark county. None of the articles mention the defendant by name or the criminal action pending against him. The remoteness of the time of the publication of the articles and the lack of any mention that a criminal proceeding was involved refutes the allegation that the articles were directly prejudicial to the defendant in this criminal proceeding.

We stated in *Krueger v. State, supra,* at 575:

"The difficulty of impressing upon the record a true concept of the public sentiment in the county is manifest.

---

[2] "956.03 Change of venue or judge.

" . . .

"(3) COMMUNITY PREJUDICE. If a defendant who is charged with a felony files his affidavit that an impartial trial cannot be had in the county, the court may change the venue of the action to any county where an impartial trial can be had. Only one change may be granted under this subsection."

Just as the trial judge is in a better position to weigh the testimony of witnesses who appear before him, so is he in a better position to judge of the public sentiment of the county. He is on the ground and in a position to sense, in a way that this court cannot, the true sentiment of the community and to judge much more correctly whether it is such as to prevent a fair trial on the part of the defendants."

At the conclusion of the *voir dire* examination, the motion for a change of venue was renewed on the grounds that the defendant could not receive an impartial trial.

The *voir dire* was completed by noon of the first day of the trial. The defendant's attorney only requested one of the jurors be removed for cause, and this request was granted. The court excused five jurors during its own questioning. It is contended that the response of one of the jurors (who ultimately was not a part of the jury) evidenced prejudice and in addition prejudiced the balance of the jury panel. In response to a question as to whether he would be embarrassed if he returned a verdict of "not guilty," he stated: "Well, the reason I say this, because farmers figure if they are falsifying some statements or something, most every farmer would be up in the air, because he wants his milk check direct with the farmer."

Inasmuch as this particular panel member did not sit on the trial jury, we need not pass upon the question as to whether his response demonstrated sufficient prejudice to disqualify him. However, we are convinced that the statement is not such that the entire jury panel would be prejudiced.

Upon considering the record of the *voir dire* examination, in its entirety, we are of the opinion that the trial court did not abuse its discretion in denying this motion.

Also, we consider that the defendant was not denied due process of law for allegedly not receiving a fair trial by an impartial jury. There is nothing in this case that resembles the atmosphere present in *Sheppard v. Maxwell* (1966), 384 U. S. 333, 86 Sup. Ct. 1507, 16 L. Ed 2d

600. There was no prejudicial publicity of the trial. The news article submitted nearest in time to the trial (four months before) could even be considered a mitigating circumstance in favor of the defendant, for it stated that patrons of Laabs Dairy Company and Laabs Cheese Company would get part of the money owed them.

2. Did the remarks of the prosecutor during his opening statement prejudice the jury?

In his opening statement to the jury, the prosecutor said:

"We intend also to show that false entries were made in the general ledger of the corporation."

The defense objected to this statement because "false entries" was not part of the charge. The court sustained the objection and then, outside the presence of the jury, the defense moved for a mistrial. The trial court denied the motion, but sustained the objection. It further instructed the jury that arguments and statements of counsel are not evidence.

It is here claimed by the defendant that the above-quoted statement of the district attorney was not only error but so grave an error that the defendant suffered prejudice even though the trial court instructed the jury that arguments and statements by counsel are not evidence.

The information charged that the defendant did, among other things "falsify records, accounts and other documents." We find no prejudicial error to the cause of the defendant in prosecutor's opening statement to the jury.

It is also significant that during the trial the state produced two witnesses who testified that the ledgers showed a substantial overstatement of both the inventories and accounts receivable. The actual ledger sheets showing the false entries were admitted into evidence without objection.

3. Did the trial court properly allow an amendment to the information?

During the course of the trial it developed that the correct corporate names of the two Laabs enterprises were Laabs Dairy Company and Laabs Cheese Company; not Laabs Dairy Corporation and Laabs Cheese Corporation as alleged in the information.

The trial court granted the state's motion to amend the information to state the correct corporate names. The defendant objected to the amendment for the reason that the motion was not timely and was a material variance. In granting the motion, the trial court pointed out that the corporations were not the defendants, that the defendant was not misled as to what the charges were, nor was there any element of surprise to the defendant in the preparation of his defense. *State v. Bednarski* (1957), 1 Wis. 2d 639, 85 N. W. 2d 396.

Sec. 957.16 (1), Stats., states:

"The trial court may allow amendments in case of variance between the complaint or indictment or information and the proofs in all cases where the variance is not material to the merits of the action. . . ."

The granting of the motion to amend was proper. The variance was minor in nature and not prejudicial.

4. Did the trial court abuse its discretion in denying a motion for severance?

Appellant and his brother were jointly tried. The state's last witness was an accountant with the department of agriculture. When asked whether he found all of the corporate records that he desired in conducting his investigation, he answered that he could not find certain inventory records.

At this point the defense objected and the jury was retired. The state indicated that the witness was to

testify that certain records were destroyed by the co-defendant. Testimony on this offer was given outside the presence of the jury. When the witness indicated that defendant was not present during the witness' conversation with defendant's brother concerning the missing records, the defense moved for a severance because "[i]f this testimony is going to be admitted as to the defendant Arthur Laabs it is highly prejudicial for the defendants to try these cases together . . ." The trial court denied the motion for severance, but sustained a motion to suppress the testimony concerning the destruction of the records. This all took place in the absence of the jury.

Whether a joint trial of codefendants for their respective conduct in relation to a single episode is unduly prejudicial to each defendant is a matter within the discretion of the trial judge. *State v. Nutley, supra; Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723; *Kluck v. State* (1937), 223 Wis. 381, 269 N. W. 683; *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471.

A defendant may obtain a severance if a joint trial would be prejudicial to his individual interest. In *State v. Nutley, supra,* at 543, we discussed what constitutes prejudice in this context:

" 'Prejudice' in this sense, means that an entire line of evidence relevant to the liability of only one defendant may be treated as evidence against all defendants by the trier of fact simply because they are tried jointly. Again, if the defendants assert antagonistic defenses, they will often face the double burden of meeting the attack of both the prosecution and their codefendants. Therefore, we have held that if codefendants assert antagonistic defenses, they are entitled to separate trials."

Here the defendants had no antagonistic defenses. Furthermore no "entire line of evidence relevant to the liability of only one defendant" was presented. The motion for severance was based on the defense's fear that

testimony concerning his brother's destruction of certain records would prejudice the defendant, as he apparently was not involved in the destruction of the records. Though the severance was not granted, the jury did not hear any of the allegedly prejudicial testimony concerning the destruction of the records.

Therefore, we conclude that the refusal of the trial court to grant a severance was not an abuse of its discretion.

5. Was there ample credible evidence to support the jury's verdict of guilty?

The last contention of the defendant is that the evidence does not support the verdict of guilty. On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Stevens* (1965), 26 Wis. 2d 451, 463, 132 N. W. 2d 502; *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775.

Defendant claims that analysis of each of the elements of the offense charged discloses glaring gaps in the proof.

(a) Was there sufficient evidence to show that the defendant was a director, officer, agent or employee of the corporation?

Defendant asserts that he had resigned and was no longer connected with Laabs Cheese Company or Laabs Dairy Company when the financial statement form was filed with the department of agriculture. This contradicts his own testimony that the allegedly false statements which were sent to the department of agriculture were not only signed by him but that he also wrote "Secretary-Treasurer" below his signature. In addition, defendant

admitted that his resignation was not officially acted upon and that he continued to perform his duties thereafter.

(b) Were the financial statements sent to the department of agriculture made, circulated or published with intent to defraud?

Defendant contends there is no evidence of the requisite intent to defraud. In *State v. Kuenzli* (1932), 208 Wis. 340, 347, 242 N. W. 147, we stated:

". . . intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it. The jury was under no obligation to accept the direct evidence of intent furnished by the defendant, and must be permitted to infer intent from such of defendant's acts as objectively evidence his state of mind."

Here the defendant denied the intent to defraud and it was proper for the jury to infer intent from defendant's conduct. It is undisputed that the Laabs Cheese Company and Laabs Dairy Company were in financial trouble. The situation was bad enough to cause the defendant to place a second mortgage on his home to bring some money into the corporations. The corporations could not operate without dairy plant licenses from the department of agriculture. Dairy plant licenses cannot be issued unless the applications are accompanied by a sworn financial statement which reveals that the financial condition of the applicant is such "as to reasonably assure prompt payment to the producers for the milk and cream to be purchased by him as and when the same becomes due and payable." Sec. 100.06 (1) (a), Stats. Thus, there was ample reason from which the jury could conclude that the defendant executed false financial statements for the purpose of obtaining renewal of the dairy licenses.

(c) Were the financial statements signed and sworn by the defendant false?

There can be little question that the statements filed with the department of agriculture were false. The testimony of a former accountant for the Laabs corporations and an accountant with the department of agriculture could leave little doubt that the statements were false.

(d) Did the defendant know the financial statements filed were false?

As the trial judge stated in denying a motion for a new trial or to set aside the verdict:

"It is absolutely inconceivable that he [the defendant] and his brother could operate this business for the number of years they did and yet not have the defendant aware of what was going on. An $88,000 discrepancy in these areas, cheese inventory and accounts receivable, which deal with the most important areas of their operation, the manufacture and sale of cheese, just can't be laid to ignorance."

The false statements were sworn to and signed by defendant, Arthur Laabs, who indicated that his capacity was secretary-treasurer of each corporation. The falsity in the statements consisted of overstatements of both the inventories and the accounts receivable. The evidence shows that defendant was quite familiar with the inventory and accounts receivable of the two corporations because each month he prepared and priced the inventory and prepared a summary of the accounts receivable. We, therefore, conclude that the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.