McKISSICK, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 14. Argued December 3, 1970.—Decided January 5, 1971.*
(Also reported in 182 N. W. 2d 282.)

* Motion for rehearing denied, without costs, on March 2, 1971.

538

For the plaintiff in error there was a brief and oral argument by *Lloyd A. Barbee* of Milwaukee.

For the defendant in error the cause was argued by *Lee Edward Wells,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

WILKIE, J. Several issues are raised on this review. They are:

1. Did the method of jury selection and the jury as constituted provide defendant with an impartial jury as guaranteed by the constitutions of the United States and the state of Wisconsin?

2. Did the court abuse its discretion in refusing to grant defendant's motion for change of venue?

3. Was the state required to give defendant written notice prior to trial of its intention to rely on admissions made by defendant to police officers at the time of his arrest?

4. Did the instruction given with respect to defendant's prior conviction of disorderly conduct unduly prejudice the jury?

5. Did the state sustain its burden of proof with regard to the essential element of intent to steal?

1. *Jury selection.* Defendant challenges the jury which tried his case, contending that the jury was improperly selected and that the Negro race was not pro-

portionately represented on the jury as finally consti-tuted. Defendant never questioned the process of select-ing the jury either before or at the trial or even in his first set of postconviction motions. Present counsel, in his independent postconviction motions, raised the ques-tion for the first time on July 25, 1969. He did not present any evidence of systematic exclusion of Negroes, nor any detailed basis on which the jury selection process could be challenged. Although we conclude that the mo-tion was not timely made in the trial court and lacked any supporting evidence, we conclude, as did the trial court, that the motion should be considered on its merits.

Both the United States Constitution [1] and that of Wis-consin [2] require that the criminally accused be tried before an "impartial jury." It was long ago settled, and many times reaffirmed, that a conviction rendered by a jury from which Negroes have been intentionally and systematically excluded will not be allowed to stand.[3] This constitutional principle extends as well to the in-tentional and systematic exclusion of any identifiable group in the community which may be the subject of prejudice.[4] However, this exclusion may not be assumed or merely asserted. It must be proven by the defendant challenging the jury array: [5]

"In *State v. Bond* (1969), 41 Wis. 2d 219, 226, 163 N. W. 2d 601, the court pointed out that:
"'. . . A defendant challenging the validity of the jury array has the burden of establishing a prima facie case of discrimination. . . .'

---

[1] U. S. Const. amends. VI and XIV.

[2] Wis. Const. art. I, sec. 7.

[3] *See generally: Swain v. Alabama* (1965), 380 U. S. 202, 85 Sup. Ct. 824, 13 L. Ed. 2d 759.

[4] *Hernandez v. Texas* (1954), 347 U. S. 475, 74 Sup. Ct. 667, 98 L. Ed. 866; *State v. Bond* (1969), 41 Wis. 2d 219, 163 N. W. 2d 601.

[5] *Swain v. Alabama, supra,* footnote 3; *State v. Holmstrom* (1969), 43 Wis. 2d 465, 168 N. W. 2d 574.

"Once the defendant presents a prima facie case of discrimination, the burden shifts to the prosecution. *Whitus v. Georgia* (1967), 385 U. S. 545, 550, 87 Sup. Ct. 643, 17 L. Ed. 2d 599." [6]

Defendant made no such showing here, nor are his assertions supported in the law. The mere lack of proportional representation of races on a jury panel does not constitute discrimination,[7] and an accused is "not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. . . ." [8]

States are permitted to decide for themselves the method to be used in the empanelling of jurors, and the method selected will not be tampered with provided it meets constitutional requirements.[9] The jury in this case was selected pursuant to sec. 255.04, Stats., which method has previously been examined and approved by this court as constitutionally proper.[10]

Defendant further contends that the Milwaukee county system of two panels, one for criminal actions and one for civil, created a biased jury in his case. He contends that since the criminal panel is selected to serve for two months at a time (four months during the summer), while the civil panels serve for only three weeks, criminal jurors consequently have more experience in hearing criminal matters, which results in a bias in favor of the state. Defendant again offers no evidence nor citation of authorities. Obviously, his contention has little merit.

[6] *State v. Holmstrom, supra,* footnote 5, at page 471.

[7] *Cassell v. Texas* (1950), 339 U. S. 282, 70 Sup. Ct. 629, 94 L. Ed. 839.

[8] *Swain v. Alabama, supra,* footnote 3, at page 208.

[9] *Brown v. Allen* (1953), 344 U. S. 443, 73 Sup. Ct. 397, 97 L. Ed. 469.

[10] *State v. Bond, supra,* footnote 4.

Serving on a jury panel for the state for two or four months rather than three weeks hardly constitutes impressment into the service of the prosecutor. Obviously this added experience may work to the advantage of an accused as well as the state. In any event, a prima facie case has not been made by defendant.

2. *Change of venue.* Defendant contends that his motion for change of venue was improperly denied. On May 6, 1968, defendant was granted his motion for a continuance in order for a new panel of jurors to be available for the trial of his case. Defendant, as the basis for this motion, presented an article which appeared in the Milwaukee Journal on April 30, 1968, which article noted that the defendant was awaiting trial on a charge of fire bombing which occurred on August 2, 1967, during the Milwaukee riots. The article further noted that defendant's brother had been killed by police during the same incident. No other evidence was presented and no challenge to the truth of the news story was raised.

On the day of trial, August 1, 1968, an extensive *voir dire* of individual jurors was conducted by the court, a significant portion of which was held in chambers. Eight jurors admitted knowledge of these incidents and expressed the possibility of prejudice. These prospective jurors were all struck by the court. Another juror admitted reading of the incidents but expressed ability to decide the case on the evidence actually presented. Defendant's counsel did not move to strike for cause and he did not choose to exercise a peremptory strike. The motion for a change of venue made at this time was denied.

A change of venue may be a constitutional right in those cases where adverse community prejudice will make a fair trial impossible.[11] But the question whether a fair trial will in fact be impossible, framed in the motion for change of venue, is addressed to the discretion of the

---

[11] *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919.

trial court.[12] This discretion is sharply circumscribed, however, and must rest upon consideration of the evidentiary matter presented.[13] Should such evidence give rise to a reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion to deny a motion for change of venue.[14] Any doubt in the mind of the trial court should be resolved in favor of the defendant,[15] and in some cases the court may be required to act sua sponte.[16]

The constitutional guarantee of a fair trial before an impartial jury is not, however, synonymous with a change of venue. Change of venue is only one method of guaranteeing a fair trial; others are *voir dire* and continuance.[17]

The trial court's responsibility is to make inquiries of the jurors as to whether there is prejudice and to take such steps as may be necessary to insure a fair trial.[18]

Courts have considered various factors as relevant in determining whether a change of venue should have been granted,[19] including: The inflammatory nature of the publicity; the degree to which the adverse publicity permeated the area from which the jury panel would be drawn; the timing and specificity of the publicity; the degree of care exercised, and the amount of difficulty encountered, in selecting the jury; the extent to which the jurors were familiar with the publicity; and the defendant's utilization of the challenges, both peremptory and

[12] *State v. Laabs* (1968), 40 Wis. 2d 162, 166, 161 N. W. 2d 249.

[13] *State v. Kramer, supra,* footnote 11.

[14] *Id.*

[15] *State v. Herrington* (1969), 41 Wis. 2d 757, 763, 165 N. W. 2d 120.

[16] *State v. Alfonsi* (1967), 33 Wis. 2d 469, 147 N. W. 2d 550.

[17] *Id.; State v. Woodington* (1966), 31 Wis. 2d 151, 142 N. W. 2d 810, 143 N. W. 2d 753, appeal dismissed and certiorari denied, 386 U. S. 9, 87 Sup. Ct. 854, 17 L. Ed. 2d 699.

[18] *State v. Herrington, supra,* footnote 15.

[19] *See generally:* Annot. (1970), 33 A. L. R. 3d 17.

for cause, available to him on *voir dire*. In addition, courts have also considered the participation of the state in the adverse publicity as relevant, as well as the severity of the offense charged and the nature of the verdict returned.

In the instant case we have a situation where a news story concerning defendant was published four months before the trial. The news story appeared on the front page of the second section of the Milwaukee Journal on April 30, 1968. The headline over the story stated "Riot Suspect McKissick Sought as 1 of 4 Gunmen." The relevant portions of the story state:

"Police Tuesday were seeking Alvin McKissick, 20, and another man on charges that they participated in the $850 armed robbery of a tavern owner Mar. 20. McKissick's attorney said he would produce his client later in the day.

"The youth is awaiting trial in circuit court on a charge of attempted arson. He is accused of throwing a fire bomb at a paint store Aug. 2, during the riot here.

"McKissick's younger brother, Clifford, 18, was killed by a policeman's bullet during the fire bombing incident."

The story then goes on to name other men charged in the robbery and briefly describes the events in an objective manner. No further mention is made of defendant or his brother.

The news story is not written in an inflammatory manner and is not in any way concerned with the offense here involved, nor the pending trial. It was printed four months prior to this trial. Nine jurors, of 20 questioned during *voir dire,* were further examined in chambers. One said he had no knowledge whatsoever of defendant, and that he had not indicated any knowledge of defendant during *voir dire.* The remaining eight indicated knowledge of defendant through news coverage and were carefully questioned as to their possible prejudice by the court and both counsel. Four of these eight were removed for cause by the court; three were expressly accepted

by defendant's counsel (later not chosen as members of this jury). In the end, only one of these eight remained on the jury who tried the case; defendant's counsel neither requested her removal for cause, nor did he exercise his right to peremptorily strike her. Her statement that she could judge the case without being affected by the news story was unequivocal. Defendant has shown nothing which moves this court to find an abuse of discretion in the trial court's denial of defendant's motion for a change of venue.

Even where no abuse of discretion exists, hindsight may reveal that defendant did not in fact receive a fair trial.[20] Such does not appear to be the case here. Defendant has offered nothing which would indicate the jury's verdict was the result of prejudice except that a news story mentioning defendant in connection with another crime was printed four months earlier, and that one of the jurors who tried the case was aware of it. Not all improper news stories published, even during trial, will warrant a reversal and a new trial.[21] Here the story was published four months earlier, was related to a different offense, and was hardly "improper." Further, jurors need not be entirely unaware of events in their community to constitute the "impartial jury" which is constitutionally required.[22] "Sec. 270.17, Stats., codifies this rationale in Wisconsin." [23]

3. *Notice of the intended use of defendant's confession.* Defendant contends that he was entitled to notice that the prosecution would introduce certain admissions made by him to police shortly after his arrest, and that the state's

[20] *State v. Herrington, supra,* footnote 15; *State v. Laabs, supra,* footnote 12; *Miller v. State* (1967), 35 Wis. 2d 777, 151 N. W. 2d 688.

[21] *Miller v. State, supra,* footnote 20.

[22] *Irvin v. Dowd* (1961), 366 U. S. 717, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751; *State v. Kramer, supra,* footnote 11; *State v. Herrington, supra,* footnote 15.

[23] *State v. Kramer, supra,* footnote 11, at page 33.

failure to do so resulted in his inability to adequately challenge its admissibility. This argument has no merit for three reasons.

In the first place, such notice before trial is not required. In *Roney v. State*,[24] this court stated:

"The defendant herein also contends that the hearing was improperly held because no special notice was given by the prosecutor that the confession or admission would be offered in evidence at the trial, as suggested by *Goodchild*. We do not consider the suggestion with regard to notice the *sine qua non* for the introduction of a statement under either *Miranda* or *Goodchild*. If, however, a statement is sought to be introduced which is subject to either a *Goodchild* or *Miranda* objection, the defendant should have an opportunity to test the admissibility of such statement in the type of hearing we suggest. It is therefore apparent that a statement which is sought to be introduced at trial in respect to which the defendant has no prior knowledge may result in a delay of the trial until such time as the defendant can reasonably present his objections at a hearing. It would seem, therefore, that it would be in the interest of the state, in all cases, to give the notice suggested by *Goodchild*. It is not, however, mandatory." [25]

Second, the evidence indicates that defendant in fact had some notice. The warrant and complaint both indicate that the state was in possession of defendant's statement. They state: ". . . defendant upon apprehension advised of his rights, stated that he was lookout in venture; . . ." Further, the trial court recalled hearing the district attorney tell defense counsel of the state's intention to use the statement.

In *Roney* we declared that defense counsel has a responsibility to request a pretrial hearing when he has reason to know that the confession will be offered.[26] Such was the case here.

[24] (1969), 44 Wis. 2d 522, 171 N. W. 2d 400.
[25] *Id.* at page 535.
[26] *Id.*

Third, defendant was, in fact, afforded a hearing on the admissibility of the statement. The trial court determined the statements were voluntary and uncoerced, and these same admissions were testified to before the jury with defendant afforded full opportunity to cross-examine.

4. *Instruction on defendant's prior conviction.* Defendant contends that the instruction [27] given with respect to his prior disorderly conduct conviction as affecting his credibility unduly prejudiced the jury. It appears that No. 327, relating to impeachment of the *defendant* as a witness, should have been given rather than No. 325, relating to witnesses generally. By not raising this as error, defendant has waived any objection on this ground. In any event, the court and the district attorney, in commenting on the point, clearly indicated that this prior conviction related only to defendant's credibility.

It is well settled that a defendant who elects to testify is subject to impeachment by proof of prior convictions.[28]

Defendant's assertions that merely to give an instruction on the matter in view of the fact that the conviction was of disorderly conduct, a misdemeanor, was to unduly emphasize it and exaggerate its importance. This was a proper matter for argument to the jury and the emphasis placed on it was properly within the control of the trial court in controlling oral argument. We conclude there was no error in giving the instruction, and on this entire record we are entirely satisfied that it is impossible to say that defendant was in any way prejudiced by the giving of this instruction.

5. *Burden of proof.* Defendant contends that the state did not sustain its burden of proving intent to steal on the part of defendant.

[27] Wis J I—Criminal, Part I, 325.
[28] *Underwood v. Strasser* (1970), 48 Wis. 2d 568, 180 N. W. 2d 631; *Liphford v. State* (1969), 43 Wis. 2d 367, 168 N. W. 2d 549; *State v. Midell* (1968), 39 Wis. 2d 733, 159 N. W. 2d 614.

"[T]he evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " [29]

While no direct evidence of intent was here presented, circumstantial evidence may be sufficient to establish intent to the required degree of certainty.[30] And such evidence may often be stronger and more satisfactory than direct.[31]

In the instant case defendant was observed in or near the doorway of a residence, if not in fact coming out of the building. A window previously nailed shut had been pried open, and numerous articles had been moved out of their customary places within the residence. While nothing was in fact taken, the unexpected arrival of the police has relevancy. Defendant further fled the scene and was found hiding from the police. And, in addition, there was defendant's own admission that he went with another young man, boosted him in the pried-open window, and agreed to act as lookout. This evidence was clearly sufficient to sustain the verdict.[32]

*By the Court.*—Judgment and orders affirmed.

[29] *Lock v. State* (1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183.

[30] *Strait v. State* (1969), 41 Wis. 2d 552, 559, 164 N. W. 2d 505.

[31] *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379.

[32] *State v. Holmstrom, supra,* footnote 5; *Strait v. State, supra,* footnote 30.