45 Cal.App.2d Supp. 821 (1941)
THE PEOPLE, Respondent,
v.
IVAN B. McMILLAN, Appellant.
California Court of Appeals. 
June 11, 1941.
 Harry F. Sewell for Appellant.
 John F. Dockweiler, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.
 SHAW, P. J.
 The complaint in this case contains ten counts, which are in pairs, each even numbered count charging an offense on the same date and against the same person as the offense charged in the immediately preceding odd numbered count. The odd numbered counts charge violations of section 681 of the Penal Code (the first of that number) prohibiting corporal and various other punishments in reformatory and other institutions, and the even numbered counts charge battery. Defendant was acquitted of all charges except those set forth in Counts IV, V, and X, and on them he was convicted. He appeals from those convictions.
 It appears without dispute that at the time when, it is claimed, the offenses charged were committed, defendant was a supervisor in charge of inmates of Whittier State School and the alleged victims were inmates of that school. On these facts defendant bases his most fundamental contention, which [45 Cal.App.2d Supp. 824] is that in his capacity as supervisor at the school he stood in loco parentis to the inmates, that he therefore was authorized to use reasonable physical force for their discipline, correction and punishment, and that the force used by him, as shown in the evidence, appears to have been used for those purposes and was not shown to have been unreasonable, and hence he committed no offense in using it. With this contention we do not agree.
 Whittier State School is one of the "correctional schools for the reception of wards of the juvenile court" maintained by the state (Welf. and Inst. Code, sec. 1000), and to it boys over 8 years of age may be admitted. (Welf. and Inst. Code, sec. 1101.) It is under the charge of the State Department of Institutions (Welf. and Inst. Code, sec. 1001), and that department has "charge of the persons committed to each such institution, and shall provide for their care, supervision, education, training, employment, discipline, and government. It shall exercise its powers toward the correction of their faults, the development of their characters, and the promotion of their welfare." (Welf. and Inst. Code, sec. 1004.) In the section last cited defendant claims to find support for his contention as to the law. No doubt defendant, as a supervisor placed by the Department of Institutions in charge of some of the inmates of the school, may, except as restrained by superior authority, exercise all the powers of the department over them, and it may well be that if section 1004 of the Welfare and Institutions Code were the only law to be applied those powers could be regarded as including the power of reasonable corporal punishment.
 [1] But Whittier State School is within the scope of section 681 (the first section of that number) of the Penal Code, under which some of the charges here are made and which reads as follows: "It shall be unlawful to use in the prisons, reformatory institutions, jails, State hospitals or any other State, county, or city institution any cruel, corporal or unusual punishment or to inflict any treatment or allow any lack of care whatever which would injure or impair the health of the prisoner, inmate or person confined; and punishment by the use of the straight-jacket, gag, thumb-screw, shower bath or the tricing up of prisoners, inmates or persons confined is hereby prohibited. Any person who violates the provisions of this section or who aids, abets, or attempts in any way to contribute to the violation of this section shall [45 Cal.App.2d Supp. 825] be guilty of a misdemeanor." Here no qualification or limitation is attached to the prohibition of corporal punishment. The section plainly makes unlawful the use of any corporal punishment in the institutions mentioned, no matter how moderate or reasonable the amount of force used for punishment. We do, it is true, find in the section the words "which would injure or impair the health", and defendant contends that they are descriptive of and limit the corporal punishment which is forbidden by the section; but the natural construction of the language used precludes such application of this clause. The section as now constituted divides the prohibited acts into three groups. The third group, following the semi-colon in the first sentence, is contained in a clause which is grammatically independent of the others, and does not concern us here. The first group is found in the words, "to use ... any cruel, corporal or unusual punishment", and the second in the words, "to conflict any treatment or allow any lack of care whatever which would injure or impair the health of the prisoner, inmate or person confined". These two groups are both introduced by the one phrase "It shall be unlawful", but they are separated by the disjunctive "or" and each is headed by a separate verb in the infinitive form. Corporal punishment is referred to only in the first group, and the words, "which would injure or impair the health" etc., appear only in the second group. To extend the application of the last mentioned words back past the disjunctive "or", past their nearest antecedents and past the verb which heads them would do violence to accepted rules of statutory construction. (See Hopkins v. Anderson, (1933) 218 Cal. 62, 65 [21 PaCal.2d 560]; County of Los Angeles v. Graves, (1930) 210 Cal. 21, 26 [290 P. 444].) Obviously the legislature regarded certain modes of punishment as improper in the institutions mentioned, no matter how moderate in degree, and expressly prohibited them; and then to prevent the ingenuity of guards and others from devising equally undesirable substitutes and yet to permit punishment in some form it inserted the qualified prohibitions of treatment and lack of care which would injure or impair the health. No reason appears for departing from this natural and ordinary meaning of the language used, and such meaning will therefore be followed. (People v. Stanley, (1924) 193 Cal. 428 [225 P. 1].) The history of [45 Cal.App.2d Supp. 826] the section tends to confirm this interpretation. As first enacted it contained only the first and third groups of punishment above mentioned, without the word "corporal" in the first. By the amendment of 1933, the whole provision for a second group, as above quoted, was added and the word "corporal" was inserted in the first group. Had it been intended that the condition as to impairment of health should apply to corporal punishment, it would have been easy and natural to insert the prohibition of such punishment in the second group, where this condition was placed, but this was not done.
 Our conclusion on this matter is not at all disturbed by consideration of the provisions of section 1004 of the Welfare and Institutions Code on which defendant relies, even though that section appears as the later enactment. Section 681 of the Penal Code was amended into its present form including the addition of the prohibition of corporal punishment, in 1933 (Stats. 1933, p. 2396), while the Welfare and Institutions Code containing section 1004, was adopted in 1937 (Stats. 1937, pp. 1005, 1056). But section 1004 was not then entirely new. The act under which Whittier State School was organized (Stats. 1889, p. 111 [Deering's Gen. Laws, 1937, Act 9255]) provided for a board of trustees with power "to control, manage and direct ... government and discipline of all ... inmates of said institution" (sec. 3) and "see ... that strict discipline is maintained" (sec. 7), and for a superintendent of the school who "shall discipline, govern, instruct, employ and use his best efforts to reform the children and youth under his care" (sec. 12). [2a] As far as section 1004 provides for discipline and government of the inmates of this school, it is substantially a re-enactment of the former statute, and section 2 of the Welfare and Institutions Code provides that in such case it is to be construed as a "continuation" of such statute and not as a new enactment. So construing the Welfare and Institutions Code, we find in section 1004 thereof no intention to repeal, either in whole or in part, section 681 of the Penal Code, which was in force at the date of enactment of the first mentioned code. (See People v. Fowler, (1938) 32 Cal.App.2d Supp. 737, 741 [84 PaCal.2d 326]; Home for Inebriates v. Reis, (1892) 95 Cal. 142, 149 [30 P. 205].) [3] Repeals by implication are not favored. (23 Cal.Jur. 694-696.) "A general statute will not repeal by implication a former one which is [45 Cal.App.2d Supp. 827] special or which is limited in its application unless there is something in the general law that makes it manifest that the legislature contemplated and intended a repeal." (Boyd v. Huntington, (1932) 215 Cal. 473, 482 [11 PaCal.2d 383]; Home for Inebriates v. Reis, supra; 23 Cal.Jur. 706-707.) [2b] This principle is plainly applicable here. Section 1004 of the Welfare and Institutions Code is a general statement of the powers of the State Department of Institutions over several "correctional schools" (see secs. 1000, 1001) and gives that department general powers of discipline, government, etc., without specifically authorizing the use of any particular means for those purposes. Section 681 of the Penal Code deals specifically with the means of punishment and prohibits several such means. These sections may all be construed together and effect given to both, and this will be done, under the rule above stated. (See, also, Riley v. Forbes, (1924) 193 Cal. 740 [227 P. 768].)
 [4] Defendant further insists that such force as he used was not for punishment but for the purpose of keeping order. If this were the fact, he would not be a violator of section 681, Penal Code, for it relates only to acts done by way of punishment, and does not prohibit force used to keep order or prevent misconduct by inmates. (O'Brien v. Olson, (1941) 42 Cal.App.2d 449 [109 PaCal.2d 8].) But we find in the record evidence tending to show, regarding each count on which defendant was convicted, that such force as defendant used was applied just after the objects of it had violated some rule of the institution and apparently for the purpose of punishing them for the violation and not to prevent one.
 [5] Defendant further contends that the evidence is inherently incredible and must be rejected altogether. We have carefully read the evidence relating to the counts on which defendant was convicted, and while several of the witnesses contradicted themselves on the stand and were impeached by evidence of other statements contrary to the parts of their testimony adverse to defendant, and in some cases their memories required considerable refreshing before they were able to give such testimony, yet we cannot say that the stories told by them are in themselves impossible. Their self-contradictions did not make their testimony inherently improbable. (People v. Moreno, (1938) 26 Cal.App.2d [45 Cal.App.2d Supp. 828] 334, 336 [79 PaCal.2d 390]; People v. Becker, (1934) 140 Cal.App. 162, 166 [35 PaCal.2d 196].) [6] They related conduct such as, unhappily, does occur occasionally among those to whom the power to discipline others is committed. The question whether it did occur here is one on which the decisions of the jury and of the trial judge, who denied a new trial, must be accepted by us as binding. Moreover, as to Count X, which, as will presently appear, is the only count on which a conviction can be sustained, such conviction is warranted by the testimony of the defendant himself, who stated on the stand that after the inmate mentioned in that count had committed an infraction of the rules, defendant, on discovering it, asked the inmate if he did not know it was against the rule, to which the inmate replied that he did, and defendant then slapped the boy three times across the face with his open hand. (Tr., pp. 524-5.) Upon the construction which we give to section 681, Penal Code, this was corporal punishment in violation of that section. Being thus an unlawful use of force upon the person of this boy, it was also a battery, as charged in Count X upon which the conviction was had, battery being defined in section 242, Penal Code, as "any wilful and unlawful use of force or violence on the person of another."
 As already indicated, defendant was charged in Count IX with violation of section 681, Penal Code, committed upon the same boy and at the same time as the battery charged in Count X. He was acquitted on Count IX and convicted on Count X. He now contends that these verdicts are inconsistent, that the acquittal on Count IX was in effect an acquittal also on Count X, and that the conviction on the latter cannot stand. [7] We think defendant is not in a position to take advantage of this contention. He requested and the trial court gave an instruction which, after referring to Counts IX and X, instructed the jury "that in no event can the defendant be found guilty of both of said counts." (Tr., p. 594.) The jury obviously followed this instruction. By it they were put to an election, if they considered defendant guilty in this matter, whether to return such a verdict on Count IX or on Count X. Both counts were before them for action and verdict, and if they could not convict on both, as this instruction told them, they must acquit on one. The defendant who thus required them to elect and made necessary the verdicts now said to be inconsistent cannot be heard [45 Cal.App.2d Supp. 829] to complain of the result. (See People v. McCollum, (1931) 116 Cal.App. 55, 58 [2 PaCal.2d 432].)
 [8] Furthermore, the trial court, in instructing the jury, followed the construction of section 681, Penal Code, for which defendant has contended here, and instructed them that, to violate section 681 "the punishment inflicted, in addition to being wilful and unlawful must ... impair or injure the health of the victim", and that "In battery as herein alleged, the punishment need not impair or injure the health of the victim". (Tr., p. 578.) By a formula instruction undertaking to state all facts necessary for a conviction on Count IX, one of those listed was that "the defendant did wilfully and unlawfully inflict and use upon said [naming the victim] cruel or corporal or unusual punishment which did injure or impair the health of said" victim. (Tr., p. 589.) We cannot ascertain from the record who requested these instructions. But regardless of the party requesting them, they told the jury that to warrant a conviction under Count IX, charging a violation of section 681, Penal Code, certain facts must appear which were unnecessary to establish the battery charged in Count X. These facts were also alleged in Count IX, and although such allegations were unnecessary, they were before the jury and were emphasized by these instructions. Since these facts were not shown by the evidence as to Count IX, the jury, if it followed these instructions, was required to acquit the defendant on that count. Under these circumstances, its doing so cannot be construed as an acquittal on Count X also. Seeming inconsistency in verdicts has occasioned much judicial casuistry, but, under the circumstances of this case, a verdict of guilty supported by the evidence should not be reversed on that ground. (People v. Horowitz, (1933) 131 Cal.App. Supp. 791 [19 PaCal.2d 874]; People v. Smith, (1931) 117 Cal App. 530, 533, 534 [4 PaCal.2d 268]; People v. Stovall, (1928) 94 Cal.App. 635 [271 P. 576].)
 [9] Counts IV and V, on both of which defendant was convicted, relate to the same inmate, Count IV charging a battery committed on May 15, 1940, and Count V charging a violation of section 681, Penal Code, on July 25, 1940. There is evidence tending to show three different occasions when defendant used force on this particular inmate. One of these incidents is described in substantially the same [45 Cal.App.2d Supp. 830] manner and dated some time in May by all the witnesses who testified to it; but the testimony regarding the others, while placing them in July, makes them different in so many respects that the jurors might reasonably have considered them to be two separate incidents. Thus there may have been, in the eyes of the jury, three separate incidents on which to found their verdicts of guilty on Counts IV and V. They should, therefore, have been instructed that all must agree on the same incident as a basis for either verdict, even though such instruction was not requested by the defendant. (See People v. Scofield, (1928) 203 Cal. 703, 710 [265 P. 914]; People v. Heddens, (1936) 12 Cal.App.2d 245, 247 [55 PaCal.2d 230].) No such instruction was given. Failure to give it was aggravated by the giving of the following instruction: "The Court instructs the jury that it is wholly immaterial on what day or night the offenses charged in the various counts of the complaint were committed, provided you believe from the evidence beyond a reasonable doubt they were committed, and that they were committed within one year prior to the filing of the complaint in this case." (Tr., p. 617.) This instruction permitted the jury to apply any of the three incidents which they could find in the testimony to either Count IV or Court V, and under the circumstances of this case, where there was proof tending to establish more offenses than were charged, the giving of it, without an instruction clearly informing the jury that they must all agree on the same act as the basis of any verdict, was error. (People v. Elgar, (1918) 36 Cal.App. 114 [171 P. 697]; People v. Williams, (1901) 133 Cal. 165, 168 [65 P. 323]; see, also, People v. Whitacre, (1926) 79 Cal.App. 27, 32 [248 P. 924]; People v. Becker, supra.)
 [10] Defendant also contends that the evidence is insufficient to support his conviction on Count V, which charges a violation of section 681 of the Penal Code, because evidence is lacking to prove the allegation in that count that the punishment administered "did injure and impair the health of" the victim. For the purpose of a possible new trial we state our opinion that, since the allegation itself is surplusage, an offense under section 681 being fully charged without it, no proof of it is necessary to a conviction. (People v. Handley, (1893) 100 Cal. 370, 372 [34 P. 853]; People v. Stevens, (1926) 78 Cal.App. 395, 400-403 [248 P. 696].) [45 Cal.App.2d Supp. 831]
 The judgment entered on Count X of the complaint and the order denying a new trial as to said count are affirmed. The judgments entered on Counts IV and V of the complaint and the orders denying a new trial as to said counts are reversed and the cause is remanded to the municipal court for a new trial on Counts IV and V.
 Bishop, J., and Fox, J., concurred.