HOLLAND, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–485–CR. Argued October 25, 1978.—Decided January 12, 1979.*
(Also reported in 275 N.W.2d 162.)

† Petition to review granted.

568

572

 

For the plaintiff in error the cause was argued by *Ruth S. Downs,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Moser, P.J., Brown and Bode, JJ.

MOSER, P.J. At about 7:00 p.m. on January 9, 1974, the defendant Roy Holland (Holland) and Thomas Hoppe (Hoppe) gained entrance to the apartment of Mary Jans (Jans) and the victim, Lynn Westbrook (Westbrook). Once inside, Holland threatened Jans with bodily harm if she did not perform certain sexual acts. Holland does not contest his conviction of sexual perversion for those acts. Thus, we are only concerned with the murder conviction on this appeal.

Later that evening, Jans and Holland were in the living room while Hoppe and Westbrook were in the adjoining bedroom. Jans heard Westbrook scream, and Holland went into the bedroom. Holland returned and told Jans that Westbrook did not like what Hoppe was making her do. There was a second scream and a thud. Holland went back into the bedroom, and Hoppe emerged with "a wild violent look on his face." Hoppe told Jans that she had seen too much and began choking her.

Jans broke free and was followed into the back bedroom where Hoppe began choking her again.

A knock at the front door caused Hoppe to stop choking Jans, and Holland came out of the other bedroom. Holland volunteered to go out the back door and get the person at the front door from behind. It was decided that Jans would answer the door instead. By the time Jans answered the door, the person had left. Holland told Jans that Westbrook was dead and that they would have to take her far away before letting her go. When the men began picking up things they had scattered about the apartment, Jans went into the kitchen and slipped out the back door to get help.

The men were gone by the time the police arrived. Westbrook was found in the bedroom adjoining the living room. She was alive but badly bruised about the head and neck and was having difficulty breathing. She died about a week later from irreversible brain damage due to lack of oxygen.

On January 25, 1974, Holland was charged with first degree murder, party to a crime, contrary to sec. 940.01 and sec. 939.05, Stats. That same day, Holland was bound over to stand trial, and an information was filed. At his arraignment, Holland stood mute, and a plea of not guilty was entered by the court. On April 1, 1974, Holland moved to have his trial postponed until sometime after Hoppe's trial. The motion was granted on April 11, 1974, and Holland's trial was set for June 3, 1974.

Hoppe's trial was held on May 13 to 22, 1974 and resulted in his conviction for second degree murder. On May 28, 1974, Holland moved for a change of venue because of the publicity surrounding the Hoppe trial. Media coverage had begun immediately after the attack, and every development in the case had been promptly reported. Hoppe's trial resulted in daily reports which

summarized the testimony presented, including Hoppe's contentions that Holland had done the killing. All of the reports made reference to Holland's involvement. The motion for change of venue was denied after a hearing on May 29, 1974.

Holland's trial began as scheduled on June 3, 1974. The first day was devoted to selecting the jury. All but one of the jurors examined had heard of the case and the Hoppe trial, and most knew that Hoppe had been found guilty. Twelve prospective jurors were excused because they had already formed an opinion on Holland's guilt, and another three were excused for other reasons. Five other prospective jurors were challenged for cause when they expressed an opinion, but after reinstruction on the prosecution's burden of proof and the presumption of innocence, they stated that they could be open-minded and impartial. The challenges to these jurors were denied, and three of them became members of the jury.

At the close of the testimony, the jury was instructed on first degree murder, party to a crime. The instructions covered all three categories of the party to a crime statute,[1] and there was no instruction that the jury had to agree on which category applied. The jury found Holland guilty of second degree murder, party to a crime. Holland was sentenced to an indeterminate term of 24 years on the murder conviction.

On June 9, 1976, Holland filed a motion for post-conviction relief under sec. 974.06, Stats. A hearing was held on August 26, 1976, and the motion was denied on May 13, 1977. Writs of error to review the judgment and the order denying the motion for post-conviction relief were issued on July 25, 1977.

[1] Sec. 939.05, Stats., provides that someone is a party to a crime when he either directly commits it, aids and abets the commission of it, or conspires to commit it.

The issues presented on this appeal are: (1) did the trial court err in denying the motion for a change of venue, (2) was Holland deprived of his right to a fair trial by an impartial jury, (3) did the trial court err in instructing on first degree murder, and (4) did the trial court err in failing to instruct the jury that they all must agree on at least one of the categories of party to a crime before they may find Holland guilty.

## CHANGE OF VENUE

A motion for a change of venue is addressed to the sound discretion of the trial court and will be granted if there is a reasonable likelihood that a fair trial cannot be had.[2] This court independently evaluates the evidence and documents presented in support of the motion.[3] Any doubt on this matter should be resolved in favor of the defendant.[4] The factors which this court is obliged to consider in determining whether a change of venue ought to have been granted because of community prejudice are:

[t]he inflammatory nature of the publicity; the degree to which the adverse publicity permeated the area from which the jury panel would be drawn; the timing and specificity of the publicity; the degree of care exercised, and the amount of difficulty encountered, in selecting the jury; the extent to which the jurors were familiar with the publicity; and the defendant's utilization of the challenges, both peremptory and for cause, available to him on *voir dire*. In addition, courts have also considered the participation of the state in the adverse publicity as

[2] *Turner v. State,* 76 Wis.2d 1, 26–27, 250 N.W.2d 706, 719 (1977).

[3] *Id.*

[4] *McKissick v. State,* 49 Wis.2d 537, 545, 182 N.W.2d 282, 286 (1971).

relevant, as well as the severity of the offense charged and the nature of the verdict returned.[5]

The parties agree that the publicity surrounding the Hoppe trial permeated the area from which the jury was drawn. They agree that the publicity occurred shortly before Holland's trial and went into the specific facts of the case in significant detail. The primary dispute concerning the publicity is over its inflammatory nature.

Our examination of the newspaper articles and affidavits submitted along with the motion for change of venue and the motion for post-conviction relief shows that the publicity surrounding the Hoppe trial was informational. The articles summarized the testimony given on each day but did not editorialize. There were no assertions of Holland's guilt or calls for severe punishment of the perpetrators. Holland asserts, however, that informational news reports can become inflammatory when they are so frequent, detailed, and recent as the news reports in this case.

Where news reports are objective, informational, and non-editorial, they are not necessarily prejudicial.[6] Such news may inform possible members of the jury, but this is not necessarily objectionable. News reports become objectionable when they editorialize, amount to "rabble rousing," or attempt to influence public opinion against a defendant.[7] While the nature of the crime itself was somewhat inflammatory, the news reports did not add to this in any of these objectionable ways.

The degree of care exercised and the amount of difficulty encountered in selecting the jury is a good indica-

---

[5] *Id.* at 545–46, 182 N.W.2d at 286.

[6] *Hoppe v. State,* 74 Wis.2d 107, 112, 246 N.W.2d 122, 126 (1976).

[7] *Briggs v. State,* 76 Wis.2d 313, 327, 251 N.W.2d 12, 18 (1977).

tion of any inflammatory impact of the news reports. The trial court's sensitivity to the potential community prejudice is evident in the extensive, in-chambers voir dire of the prospective jurors. Each juror was voir dired individually. Twelve prospective jurors were excused because they had already formed opinions. On the other hand, there were several jurors who had no hesitancy in stating that they would be completely open-minded and impartial. A panel of twenty-four was selected after fifteen jurors were excused for cause.

Almost all of the jurors were aware of the Hoppe trial and most knew that he had been convicted, although many were unsure of the degree of murder and number of charges which had been found. It is not necessary, however, that the jurors be ignorant of the facts and issues involved.[8] A juror may not be challenged for cause because he has obtained information on the case through newspapers unless he has become biased or prejudiced as a result.[9]

Holland challenged for cause each of the prospective jurors who gave any indication of having formed an opinion in the case. Five of these challenged jurors were allowed to remain on the jury panel after reinstruction and an indication that they could be impartial. Two of them were struck with the defendant's peremptory challenges.

There is no claim that the State played any role in the publicity surrounding the case. It is agreed that first degree murder is the most serious crime with which a defendant can be charged.

Taking these factors together, it is clear that a change of venue was not necessary. The widespread publicity

---

[8] *Irvin v. Dowd,* 366 U.S. 717, 722 (1961); *Tucker v. State,* 56 Wis.2d 728, 735–36, 202 N.W.2d 897, 900 (1973).

[9] *Tucker v. State,* 56 Wis.2d at 735, 202 N.W.2d at 900.

shortly before the Holland trial clearly informed the prospective jurors of the matters in issue. The publicity was not, however, editorialized or otherwise designed to convince the public of the defendant's guilt. The record of the voir dire reveals that most of the prospective jurors were able to approach the case with an open mind; those who could not were excused. Thus, the voir dire and challenges were effectively used to screen out those who had been affected by the publicity. Finally, the verdict returned was for a lesser offense than that charged.[10] Therefore, there was no reasonable likelihood that a fair trial could not be had.

## IMPARTIAL JURY

The second allegation of error is that Holland was denied his right to a trial by an impartial jury because three prospective jurors who had been challenged for holding an opinion in the case became members of the jury. The source of Holland's objection is that after the challenge was made, the trial court reinstructed on the burden of proof and the presumption of innocence. These prospective jurors indicated impartiality after being so instructed, and the challenges were denied. Holland did not use his peremptory challenges to remove these jurors from the panel.[11] Holland contends that

---

[10] The State argues that the conviction of the same offense as Hoppe shows that it was *the State* which had been prejudiced by the publicity. Holland argues that this is no indication of impartiality since he had sought acquittal. Since any doubt is to be resolved in favor of the defendant, see note 4, *supra*, and accompanying text, we conclude that the verdict does not indicate a lack of prejudice against Holland. We cannot go further, in light of the other factors, to say that the verdict indicates a prejudice against Holland.

[11] Holland argues, and the State does not dispute, that the failure to use peremptory challenges to remove these jurors does

these jurors were prejudiced and their presence on the jury deprived him of his right to an impartial jury.

In order to conclude that the jury was biased, we must find that the opinions initially expressed by these three jurors disqualified them and that no subsequent reinstruction can produce impartiality. We are not able to make such a determination.

Qualified jurors need not be totally ignorant of the facts and issues involved. It would establish an impossible standard to hold that the mere existence of any preconceived notion about the guilt or innocence of an accused, without more, rebuts the presumption of a prospective juror's impartiality. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.[12]

The trial court received assurances from each of these jurors that they could set aside whatever impressions or opinions they had and could decide the case on the facts presented. Holland contends that these assurances should not have been accepted because the court's reinstruction inhibited the jurors' free expression and tended to convince them that they should express impartiality. While the jurors' assurances cannot be dispositive, the defendant has the burden of showing the actual existence of an opinion which raises a presumption of partiality.[13] That burden has not been met in this case.

not amount to a waiver of his objection to their reinstruction and the denial of the challenges. We agree.

[12] E.g., Dobbert v. Florida, 432 U.S. 282, 302 (1977); Irvin v. Dowd, 366 U.S. at 722–23 (1961); State v. White, 68 Wis.2d 628, 633, 229 N.W.2d 676, 679 (1975); Beavers v. State, 63 Wis.2d 597, 613–15, 217 N.W.2d 307, 315–16 (1974).

[13] Murphy v. Florida, 421 U.S. 794, 800 (1975); Irvin v. Dowd, 366 U.S. at 723–24.

Reinstruction on the State's burden of proof and the presumption of innocence following an indication of an existing impression or opinion is not improper in itself. Automatic dismissal of prospective jurors who indicate an opinion on the basis of pretrial publicity is not required.[14] Reinstruction has been specifically recognized as appropriate in some circumstances.[15] In this case, the trial court felt that reinstruction was necessary because the jurors' statements of opinion had been the result of leading questions by defense counsel.

Lightly held impressions which may be readily set aside upon the production of evidence do not make a juror prejudiced because such impressions are almost inevitable as a result of media publicity.[16] An examination of the statements made by these three jurors convinces us that their impressions were quite tentative and loosely held. This conclusion is strengthened by comparing their statements with those of the prospective jurors who were excused for cause. The noncoercive nature of the trial court's reinstruction is also illustrated by the voir dire of those other jurors. They were similarly reinstructed but continued to hold their opinions. Therefore, our examination of the voir dire does not reveal any bias among the members of the jury.

## FIRST DEGREE MURDER INSTRUCTION

The third allegation of error is that Holland was prejudiced by the trial court's instruction on first degree

[14] State v. White, 68 Wis.2d at 633, 229 N.W.2d at 679.

[15] United States v. Colabella, 448 F.2d 1299, 1304 (2d Cir. 1971).

[16] Reynolds v. United States, 98 U.S. 145, 155–56 (1879). See Beavers v. State, 68 Wis.2d at 612–13, 217 N.W.2d at 315.

murder even though Hoppe had already been convicted of second degree murder. Holland contends that the Hoppe jury's implicit finding of no intent to kill determined that issue against the State and precluded a conviction of first degree murder. This argument is based on double jeopardy and collateral estoppel grounds.[17]

Holland's double jeopardy claim is not well founded. It is a fundamental principle in the application of constitutional double jeopardy protection that an accused must suffer jeopardy before he can suffer double jeopardy.[18] Holland had not been previously tried on these charges. Therefore, there can be no double jeopardy here, and the constitutional provisions do not apply.

The doctrine of collateral estoppel applies to criminal cases apart from the fifth amendment as part of the common law.[19] The cases cited by Holland for the proposition that a criminal defendant may assert collateral estoppel against the government on facts de-

[17] The due process clause of the fourteenth amendment includes the fifth amendment's guarantee against double jeopardy. *Benton v. Maryland,* 395 U.S. 784 (1969). Thus, where an essential element of the crime charged has been determined in the defendant's favor in a previous prosecution of that defendant the second prosecution is barred. *Ashe v. Swenson,* 397 U.S. 436, 444 (1970). Holland argues that this identity of parties or "mutuality" has not been required in subsequent criminal decisions citing *United States v. McArthur,* 419 F. Supp. 186, 195–97 (D.N.D. 1976); *United States v. Bruno,* 333 F. Supp. 570, 575–76 (E.D. Pa. 1971); *People v. Taylor,* 12 Cal.3d 686, 117 Cal. Rptr. 70, 527 P.2d 622 (1974). The cited language in *McArthur,* however, is dicta.

[18] *Serfass v. United States,* 420 U.S. 377, 392–93 (1975).

[19] *United States v. Oppenheimer,* 242 U.S. 85, 87 (1916).

termined in a previous prosecution of another person are based on an application of such a common law doctrine.[20]

Regardless of the persuasiveness of the policy arguments raised in those cases and by the parties, we are not at liberty to grant Holland's request on common law grounds. The legislature has clearly spoken on this issue in sec. 939.05(1), Stats., which states:

(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and *although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.* (Emphasis supplied.)

The statutory language is unambiguous and forecloses Holland's claim.

### PARTY TO A CRIME INSTRUCTION

The final allegation of error is that Holland was denied his right to a unanimous verdict, contrary to art. I, §5 of the Wisconsin Constitution.[21]

---

[20] Those cases are distinguishable from this case. In *United States v. McArthur, supra* note 17, the court's statements are dicta because the court refused to apply the doctrine in the defendant's favor. All three cases involved situations where the previous trials had resulted in acquittals. Here, the Hoppe jury found that a crime had been committed. Finally, the decision in *People v. Taylor, supra* note 17, was strictly limited to cases where a defendant is charged with vicarious liability for the acts of an acquitted confederate. The public policy arguments are obviously stronger when the confederate has been acquitted.

[21] While the due process clause of the fourteenth amendment does not require a unanimous verdict in state criminal prosecutions, *Apodaca v. Oregon*, 406 U.S. 404 (1972); *Johnson v.*

As noted above, Holland was charged with first degree murder, party to a crime, contrary to sec. 940.01 and sec. 939.05, Stats. Section 939.05(2), Stats., provides:

939.05 *Parties to crime.*

. . . .

(2) A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it: or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

At trial, the State introduced evidence on all three categories of party to a crime. The State called Hoppe who testified that it was Holland who strangled the victim (direct commission). Hoppe also testified that both he and Holland agreed that they would go to Jans' apartment and force Jans and Westbrook to perform sexual acts (conspiracy). Ms. Jans testified that Holland prevented her from running for help. Ms. Jans also testified that Holland attempted to prevent the person who had come to help from gaining entrance (aiding and abetting).

After all of the testimony was concluded, the State and the defendant presented proposed jury instructions on

*Louisiana,* 406 U.S. 356 (1972), in Wisconsin unanimous jury verdicts are required in state criminal prosecutions under art. I, §5 of the Wisconsin Constitution.

party to a crime. The trial court rejected both proposed instructions and instead gave the standard Wisconsin jury instruction on party to a crime.[22]

The court instructed the jury that in order to find the defendant guilty of the crime they must find that he either directly committed the crime, or aided and abetted the commission of the crime or conspired with another to commit the crime. The court also instructed the jury that the defendant could be found guilty of murder if he agreed to commit a crime and the crime charged (murder) was the natural and probable consequence of the crime he agreed to commit (sexual perversion).[23] However, the court did not instruct the jury that, while they could find Holland guilty of the crime charged if they found he committed any of the three categories of party to a crime, they had to agree unanimously on which category he violated. Holland now claims that this omission deprived him of his right to a unanimous jury verdict. We agree.

The requirement that the jury be unanimous is essentially tied to the State's burden of proof. The State has the burden of proving every element of an offense beyond a reasonable doubt.[24] If one juror believes that the State has failed to meet its burden of proof on one element of an offense, the jury cannot return a verdict of guilty.

---

[22] Wis JI—Criminal, Part I, 400.

[23] Since this appeal is not a direct appeal, but rather an appeal from the denial of a motion for a new trial pursuant to sec. 974.06, Stats., the defendant is not challenging the jury's determination that murder was the natural and probable consequence of his agreement to commit sexual perversion.

[24] *See, e.g., In re Winship*, 397 U.S. 358 (1970); *Turner v. State*, 76 Wis.2d at 10, 250 N.W.2d at 711.

When the burden of proof requirements are applied to first degree murder and party to the crime of first degree murder,[25] the unanimity requirement becomes clear. To prove that someone committed first degree murder, the State must prove, beyond a reasonable doubt, that the defendant (1) caused the death of another human being and (2) intended to kill that person or another. If the State presents evidence on both these elements which, if believed, would be sufficient to convict the defendant, but the defendant also presents an alibi which one juror believes, the jury cannot find the defendant guilty of first degree murder by direct commission. If the State has no other evidence to show that he either aided and abetted in the murder or conspired to commit the murder, the defendant cannot be found guilty.

In order to find the defendant guilty of first degree murder, party to a crime, the State must prove something more than the elements required for a finding of guilt by direct commission. The State must prove beyond a reasonable doubt that the person charged aided and abetted in the murder in some way. If the State cannot convince twelve jurors that the defendant aided and abetted in the murder, the defendant cannot be found guilty.

Alternatively, the State may have evidence that the defendant conspired to commit the murder. If the State convinces all twelve jurors beyond a reasonable doubt

[25] While Holland was found guilty of second degree murder, party to a crime, we are using the elements of first degree murder for two reasons. First, Holland was charged with and the State attempted to prove first degree murder, party to a crime. Thus, the elements of the offense which the State attempted to prove were the elements of first degree murder. Second, it is also easier to show how the burden of proof requirement and the unanimity requirement interact if the elements of first degree murder and first degree murder, party to a crime, are used. The elements of second degree murder are more complicated than those of first degree.

that the defendant conspired to commit the murder, then he may be found guilty of first degree murder, party to a crime. If one juror is not convinced that the defendant committed an act which constitutes conspiracy, he cannot be found guilty of the offense. By giving all three alternatives to the jury—direct commission, aiding and abetting and conspiracy—without the instruction on unanimity, some jurors could find that the defendant directly committed the offense, some that he aided and abetted in the crime and some that he conspired to commit the crime. While all could agree he was guilty of something, they did not necessarily have to agree on what criminal activity the defendant committed which made him criminally liable for an offense. It is precisely this criminal activity which the State must prove beyond a reasonable doubt before the defendant may be found guilty. Where the State has not proven the criminal activity which renders the defendant liable, it has not met its burden.

The criminal activity that makes a defendant liable for the offense under the party to a crime statute is different in each category. The criminal activity for direct commission is the act that causes the death plus the intent. The criminal activity that makes a person liable as an aider and abettor, however, is completely different. The State has to prove not only that someone caused the death of another with intent to kill, but also that the defendant in some way aided and abetted. The additional element that must be proven is the act of aiding and abetting. It is this act of aiding and abetting that constitutes the criminal activity that renders the aider and abettor liable. If the State cannot prove the defendant committed the act of aiding and abetting beyond a reasonable doubt, he cannot be found guilty.

The criminal activity that makes a person liable for the crime as a conspirator is also distinct and requires

different proof. Under a conspiracy theory, the State must not only prove that someone caused the death of another with intent to kill but also that the defendant conspired to commit the murder or some other crime from which the murder was a natural and probable consequence. The additional element of criminal activity is the act of conspiracy—the agreement or the meeting of the minds. To be liable, the person alleged to have conspired need do nothing more than agree to the commission of the crime. He need perform no act that aids and abets nor any act that results in the death of another.[26]

The jury must be unanimous on each element of the crime in order to satisfy the dual requirement that the jury be unanimous and that the State prove its case beyond a reasonable doubt. Each of the three categories of party to a crime is conceptually distinct and requires proof of a distinctly different criminal activity. Therefore, the jury must be unanimous on whether the defendant is guilty as a conspirator, as an aider and abettor or as a direct perpetrator.

A number of courts have dealt with the issue of unanimity where the statute the defendant was alleged to have violated provided alternative acts which create the criminal liability.[27] In *United States v. Gipson*,[28] the

[26] *See Ianelli v. United States*, 420 U.S. 770, 778–79 (1975). *See also, Dennis v. United States*, 341 U.S. 494, 573–74 (1951) (Jackson, J., concurring).

[27] *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977); *People v. Dutra*, 75 Cal. App.2d 311, 171 P.2d 41 (1946); *People v. McMillan*, 45 Cal. App.2d Supp. 821, 114 P.2d 440 (1941); *State v. Rasmussen*, 92 Utah 357, 68 P.2d 176, 180–83 (1937); *People v. Scofield*, 203 Cal. 703, 265 P. 914 (1928); *People v. Thompson*, 144 Cal.2d 854, 301 P.2d 313 (1956) (all holding that the unanimity instruction is required). *But see, State v. Utter*, 92 N.M. 83, 582 P.2d 1296 (Ct. App. 1978); *People v. Burgess*,

defendant was charged with selling or receiving a stolen vehicle moving in interstate commerce. The statute in question listed six activities, any one of which constituted a violation. The trial court instructed the jury that they did not have to agree on which of the six acts the defendant had committed, as long as they all agreed that he had done one of them. The jury found the defendant guilty, and on appeal the fifth circuit reversed. The fifth circuit reasoned that before the jury may find the defendant guilty, they must unanimously agree on the *actus reus*[29] of the offense. Where the *actus reus* ele-

---

67 Mich. App. 214, 240 N.W.2d 485 (1976). In both of these cases the court held that the jury was unanimous and therefore a failure to instruct on unanimity was harmless. In *Burgess* the defendant was charged with direct commission and aiding and abetting. While the jury was instructed on both categories, the State had conceded at trial that the defendant did not directly commit the offense. The only issue for the jury was whether the defendant had aided and abetted. Failure to give the unanimity instruction on the different categories was therefore harmless, since the evidence only supported one category—aiding and abetting. The holding of the court in *Utter* was also that the failure to give the unanimity instruction was harmless. However, to the extent that the New Mexico court in *Utter* held that the jury need not be unanimous on the distinctly different acts committed by the defendant in order to find him guilty, we feel the court was in error. Since we are not in any way bound to follow an opinion of another state court, we decline to do so, particularly where we disagree with the courts' reasoning.

[28] 553 F.2d 453 (5th Cir. 1977).

[29] A full discussion of the term is found in Hall, *General Principles of Criminal Law*, 2d Ed. (1960) p. 222–40. As Hall points out the term has been used in a number of ways. It has been used to mean not the result of certain criminal conduct, but the "overt act;" the criminal activity which creates criminal liability; "such result of human conduct as the law seeks to prevent," and the harmful consequences. However, as Hall also points out, the term "actus reus" not only has no precise meaning but it has no historical meaning: it has no meaning of its own. Any of the above definitions can be used to define *actus reus*. Even applying

ments of the offense are conceptually distinct, the jury must be unanimous as to which *actus reus* they find the State has proven beyond a reasonable doubt. In *Gipson,* the six acts listed in the statute were separated into two categories. The first category was the receipt, concealment or storage of the vehicle. The second category was the bartering, selling or disposing of the vehicle. The *actus reus* of the first category was the act of keeping the vehicle in a certain spot, the *actus reus* of the second was the act of marketing the vehicle. The jury did not have to agree on how the vehicle was marketed or how it was received, stored or concealed, but it had to unanimously agree on one of the categories. If some jurors believed the defendant had marketed the vehicle and some jurors believed he had concealed or stored the vehicle, the State had not met its burden of proof on the *actus reus* element and the jury could not find the defendant guilty. On the other hand if all twelve jurors believed the defendant had in some way marketed the vehicle, the jury was unanimous and the State had met its burden, even though the jurors disagreed on the specific act that constituted marketing (i.e., sale, barter or disposal).

Similarly, the three categories of party to a crime are conceptually distinct and have different *actus reus* ele-

the definition of "such result of human conduct as the law seeks to prevent" or the "harmful consequences," aiding and abetting, conspiracy and direct commission have separate and distinct *actus reus* elements. The harmful consequences to society of aiding and abetting is the act of assisting someone in committing an offense. The harmful consequences to society of conspiracy is the agreement—not the substantive crime eventually committed. *Ianelli v. United States, supra; United States v. Feola,* 420 U.S. 671, 694 (1975); *Callanan v. United States,* 364 U.S. 587, 593–94 (1961); *Dennis v. United States, supra; Krulewitch v. United States,* 336 U.S. 440, 448–49 (1949) (Jackson, J., concurring).

ments. The *actus reus* of the category covering direct commission is that of causing the death of another. The *actus reus* of each category are completely different. act of assistance. The *actus reus* of the conspiracy category is the agreement.[30] The acts which formulate the *actus reus* of each category are completely different. Since the State has the burden of proving beyond a reasonable doubt the *actus reus* element of every offense,[31] the jury must unamimously agree that the State has proven the *actus reus* element before they may find the defendant guilty. Because the *actus reus* element for each category is different, the jury must agree unanimously on which *actus reus* or which category the State has proven. To permit some jurors to find the defendant guilty on the basis that the State proved the *actus reus* element of aiding and abetting (assistance) and some jurors to find the defendant guilty on the basis of the *actus reus* of conspiracy but not on aiding and abetting, deprives the defendant of his right to be proven guilty beyond a reasonable doubt and of his right to a unanimous jury.

The State has raised a number of issues which it claims distinguishes this case from *Gipson*. First, it claims that in *Gipson* there was a specific instruction to the jury permitting the jury to return a verdict of guilty even though they did not agree on the acts which they found the defendant committed.

The fact that such a specific instruction was given in *Gipson*, however, does not render the decision inapplicable here. The unanimity requirement is a state constitutional requirement. The presence or lack of an instruction on unanimity on the categories of the crime only goes to the issue of harmless error. Where the court instructs that the jury need not be unanimous, as in

[30] *See* notes 26 and 29, *supra*.
[31] *United States v. Gipson, supra*.

*Gipson*, the error cannot be harmless. The reviewing court can assume that the jury followed the court's instruction and returned a guilty verdict even though they disagreed on the acts that rendered the defendant criminally liable.

Where no instruction requiring unanimity on a category is given, there may be some circumstances in which this failure is harmless. Such a result was reached in two cases decided since *Gipson*. However, if these cases are read carefully, they do not stand for the proposition that the case must be affirmed unless there was a specific instruction permitting non-unanimity. They do not limit *Gipson* to such a narrow holding. These courts held that under the facts in these cases, the jury was unanimous on the elements of the offense. The juries were given a general instruction on unanimity, and the evidence in dispute was evidence other than the evidence going to the criminal acts which created the criminal activity. In these cases, the *actus reus* elements of the offense were admitted or were not in dispute.

In the first case, *United States v. Pavloski*,[32] the defendant was charged with embezzling and converting union funds contrary to 29 U.S.C. §501(c) and making false statements of material facts in a labor organization annual report contrary to 29 U.S.C. §439(6). At trial, the defendant admitted all of the acts of the offense. He claimed, however, that he did not have the requisite intent to commit the crimes. Thus the court held on appeal:

[I]n the case at bar the defense did not dispute that Pavloski did all the acts charged, which were proven beyond peradventure, but denied *only* that he possessed the mental state required for violation of the statute. There was therefore no possibility of prejudice through lack of unanimity. (Emphasis supplied.)[33]

---

[32] 574 F.2d 933 (7th Cir. 1978).

[33] *Id.* at 936.

A somewhat different situation was presented in *United States v. Bolts.*[34] The defendant was charged with conspiracy to violate 21 U.S.C. §§841(a)(1), 843 (b), 952 and 960, engaging in continuing criminal enterprise, in contravention of 21 U.S.C. §848; and conspiracy to cause the importation of heroin or cocaine in violation of 21 U.S.C. §§952(a), 960 and 18 U.S.C. §2. In disposing of the unanimity issue, the court noted that this case differed from its opinion in *Gipson.* Bolts' argument on unanimity was that the jury had to unanimously agree on the specific provision of the Drug Act he conspired to violate. In *Bolts* there was no dispute as to the particular acts committed by Bolts which created the criminal liability for conspiracy. Since none of the acts were disputed, the jury had agreed unanimously on the acts that created the criminal liability. Thus, the failure to instruct the jury that they had to unanimously agree on what acts Bolts committed was harmless.

In the present case, however, there was evidence disputing all three categories of party to a crime. Both Holland and Jans made statements that tended to contradict Hoppe's statement that Holland directly committed the murder. Holland also testified that, while he agreed to commit sexual perversion, he had no intention of causing the death of anyone nor did he have any reason to believe that Hoppe would kill someone. He also disputed the State's evidence that murder was the natural and probable consequence of sexual perversion. Lastly, both Jans and Holland made statements which, if believed by the jury, would dispute the State's evidence that Holland aided and abetted Hoppe in causing the death of Westbrook. Holland testified that he attempted to help Westbrook when she was choking and having trouble breathing. The police officer who arrived on the scene shortly after the events corroborated Holland's testi-

---

[34] 558 F.2d 316 (5th Cir. 1977).

mony. Since there was conflicting evidence on all three categories of party to a crime, there is no way to determine whether all twelve jurors agreed on one of the categories or whether some thought he was guilty of conspiracy, some thought he was guilty of aiding and abetting and some believed he directly committed the offense. Consequently, unlike the courts in *Bolts* and *Pavloski,* we cannot conclude that the error was harmless beyond a reasonable doubt as required in *Chapman v. California.*[35] As the court said in *Gipson*:

> [T]he government admitted, and the record shows that the prosecution presented evidence tending to show that Gipson performed each of the six acts prohibited by 18 U.S.C. §2313. The possibility that the jury may have returned a guilty verdict in the face of a substantial rift among the jurors over the facts in the case is, therefore, a real one. Because it is impossible to determine whether all of the jurors agreed that the defendant committed acts falling within one of the two conceptual groupings, we cannot say that the district court's instruction was harmless beyond a reasonable doubt under *Chapman v. California,* 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705. We must therefore reverse Gipson's conviction and remand for a new trial.[36]

The second argument in favor of the State's position that unanimity is not required centers around the theory that sec. 939.05, Stats., defines a conspirator and an aider and abettor as a principal along with the person who directly committed the offense and thereby makes them vicariously liable. The argument then follows that since an aider and abettor and a conspirator are by statute principals, all the jury need do is unanimously agree that the defendant participated some way in the commission of the offense.

---

[35] 386 U.S. 18 (1967).

[36] *Gipson,* 553 F.2d at 459.

While it is true that sec. 939.05, Stats., makes an aider and abettor and a conspirator equally liable with the person who directly commits the offense, this vicarious liability theory has nothing to do with the unanimity requirement. Once the jury has unanimously found that a defendant is an aider and abettor, he is then liable under sec. 939.05, Stats., in the same manner as the person who directly committed the offense. Likewise, once the jury has found unanimously that a defendant is a conspirator, he is equally liable for the offense committed. However, neither vicarious liability nor sec. 939.05, Stats., supports the proposition that all the jury need agree on is that the defendant in some way participated in the crime. The State must still prove beyond a reasonable doubt *how* the defendant participated in the crime. The jury must agree on the criminal activity which makes him liable. Once the jury unanimously agrees on the criminal activity, then sec. 939.05, Stats., applies and a conspirator or an aider and abettor is held liable for the crime committed by the person who directly committed the offense.

While there are cases in which the courts have held the jury need not be unanimous on some acts allegedly committed by the defendant, the acts which the jury need not agree on are *not* the acts which create the criminal liability. They do not go to the *actus reus* element of the offense. In *Bolts,* in addition to holding that failure to instruct on unanimity was harmless, the court held that where the defendant was charged with the inchoate crime of conspiracy to violate several related statutory provisions, it was not necessary that the verdict specify the particular statutory provision which an individual defendant conspired to violate. The court's holding that unanimity is not required on the statutory provisions the defendant was alleged to have conspired to violate, how-

ever, is based on the unique law of conspiracy. When one is charged with the inchoate crime of conspiracy, all the State need prove is that the defendant conspired to commit *a* crime, not any particular crime. The defendant is guilty of the inchoate crime of conspiracy when he agrees with another to commit a crime and an overt act is committed by someone in furtherance of the conspiracy regardless of whether a crime is actually committed.[37] In addition, if a crime is actually committed, it makes no difference what crime was eventually committed. It is the conspiracy or agreement to commit a crime that creates the criminal liability under the inchoate crime of conspiracy.[38] Thus, in *Bolts* the jury only had to unanimously agree that Bolts conspired to commit *a* crime. "[T]here was no reason for the jury to ascertain, unanimously or otherwise, what particular statutory provision Bolts himself had conspired to violate, where the jury determined that he participated in the conspiracy to violate the Drug Act as alleged."[39]

Likewise, in *People v. Failla,*[40] the defendant was charged with burglary. On the burglary counts the defendant was charged with entering " 'with the intent . . . to commit *a felony* and theft.' "[41] The defendant argued that the unanimity requirement required the jury to agree on what felony the defendant entered with the intent to commit. The California court, however, held that the unanimity requirement did not apply because the act which creates the criminal liability is the act of

---

[37] *Feola,* 420 at 693–94 (1975); *United States v. Bayer,* 331 U.S. 532, 542 (1947).

[38] *Ianelli,* 420 U.S. at 777; *United States v. Feola, supra; Dennis v. United States, supra* at note 26; *United States v. Bayer, supra.*

[39] *Bolts,* 558 F.2d at 326.

[40] 51 Cal. Rptr. 103, 414 P.2d 39 (1966).

[41] *Failla,* 51 Cal. Rptr. at 108, 414 P.2d at 44.

entering with the intent to commit *any* felony. It made no difference what felony the defendant intended to commit. "The gravamen of a charge of burglary is the act of entry itself, and 'An entry may be made with intent to commit' " any felony.[42] The California courts, however, have long required that when the defendant has been prosecuted for a violation of a statute under which any one of several different acts is sufficient to constitute the offense, the jurors must be instructed that in order to return a verdict of guilty they must all agree on at least one of the unlawful acts allegedly committed by the defendant.[43]

The courts' opinions in *Bolts* and *Failla* do not apply to the present situation. In both *Bolts* and *Failla* the jury still had to unanimously agree on the criminal act which made the defendants liable. In *Bolts* they had to agree that the defendant committed the act of conspiracy, and in *Failla* the jury had to agree on the act of illegal entry. In Holland's case, as explained earlier, the criminal act creating the liability is the act of conspiracy *or* the act of aiding and abetting *or* the act of directly committing the crime. The jury must unanimously agree on at least one of the unlawful acts allegedly committed by the defendant before they may find him guilty.

The last argument the State makes is that even if an instruction on unanimity should have been given, the error was waived because Holland failed to object to the instruction on party to a crime when it was given. The

---

[42] *Id.*

[43] *People v. Dutra, supra* at note 27; *People v. McMillan, supra* at note 27; *People v. Scofield, supra* at note 27; *People v. Thompson, supra* at note 27. In *People v. Failla, supra,* the court acknowledged this unanimity requirement but distinguished the case on the basis that the crime charged involved only one unlawful act—the illegal entry.

right to a unanimous verdict, however, is so fundamental that it cannot be waived.[44]

Our holding today is a pronouncement of a new constitutional rule governing criminal proceedings. The unanimity requirement as it relates to the party to a crime statute has never been authoritatively ruled upon by any appellate court in this state. No statute or case law of this state has previously required that the unanimity instruction be given. In announcing a new constitutional ruling on matters of criminal procedure, the court should not indulge in the fiction that the new rule has always been the law because it is an interpretation of a long existing constitutional right.[45] However, simply because our decision today pronounces a new constitutional rule, it does not necessarily mean it should be applied prospectively only. Even where new constitutional rulings are made, the person raising the issue gets the benefit of the new rule,[46] unless the error was harmless.

---

[44] *Sincox v. United States*, 571 F.2d 876 (5th Cir. 1978); *Gipson*, 553 F.2d at 456 n. 4; *Hibdon v. United States*, 204 F.2d 834, 838 (6th Cir. 1953). While these cases all dealt with federal criminal defendants guaranteed the right to jury unanimity under the sixth amendment to the United States Constitution, the same guarantees are granted to State criminal defendants where the State constitution provides a right to a unanimous jury verdict, as is the case in Wisconsin. *See* note 21, *supra*.

[45] *Griffin v. Illinois*, 351 U.S. 12, 26 (1956) (Frankfurter, J., concurring).

[46] *Jones v. State*, 37 Wis.2d 56, 69a–69b, 155 N.W.2d 571, 572 (1968). For applications of this rule *see Gagnon v. Scarpelli*, 411 U.S. 778 (1973); *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Boykin v. Alabama*, 395 U.S. 238 (1969); *McCarthy v. United States*, 394 U.S. 459 (1969); *Gilbert v. California*, 388 U.S. 263 (1967); *United States v. Wade*, 388 U.S. 217 (1967); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Escobedo v. Illinois*, 378 U.S. 478 (1964); *Mapp v. Ohio*, 367 U.S. 643 (1961); *State ex rel. Johnson v. Cady*, 50 Wis.2d 540, 185 N.W.2d 306 (1971).

Since we have already determined that the error was not harmless beyond a reasonable doubt, there is no doubt that Holland gets the benefit of our decision today.

The more difficult question on prospective and retroactive application is whether our decision should apply to those others who have already been convicted, sentenced and had their appeals finally adjudicated, or whether it is limited solely to trials held in the future and all cases pending on appeal in which the issue has been raised.

The rule established today is based on state constitutional grounds. In Wisconsin the criteria for determining whether a rule should be given retroactive application are: (a) the purpose to be served by the new standard (i.e., whether its purpose is to deter police conduct or protect the integrity of the fact finding process); (b) the extent of reliance by law enforcement authorities on the old standard (including the prosecutors and the courts) and (c) the effect on the administration of justice of a retroactive application.[47]

There is no question that the purpose to be served by the new rule is to protect the fact finding process. The unanimity requirement stems from and is required to preserve the defendant's right to have the State prove every element of the charged crime beyond a reasonable doubt. It goes to the jury verdict itself, not merely to the admissibility of certain evidence.

However, prosecutors and trial courts have for years relied on the unchallenged practice which regarded the

[47] *State v. Michels Pipeline Construction, Inc.*, 63 Wis.2d 278, 303b, 219 N.W.2d 308, 309 (1974); *Allison v. State*, 62 Wis.2d 14, 27, 214 N.W.2d 437, 444 (1974); *In re Application of Moroney*, 54 Wis.2d 638, 639–40, 196 N.W.2d 712, 713 (1972); *State ex rel. Johnson v. Cady*, 50 Wis.2d at 555, 185 N.W.2d at 314; *State ex rel. La Follette v. Raskin*, 30 Wis.2d 39, 50, 139 N.W.2d 667, 673 (1966).

general unanimity requirement as sufficient. Furthermore, applying this rule fully retroactive would cause a grave problem in the administration of justice. The number of persons convicted under the party to a crime statute are countless. To reverse their convictions would put an unbearable burden on the state to attempt to retry all of these defendants.

Balancing these considerations, we hold that our opinion is partially retroactive. Holland is entitled to the benefit of the rule, and the decision shall apply to all cases now pending in the trial courts on post-conviction motions or on appeal where the issue has been raised. It shall also apply to all trials held after the date of this decision, including trials in progress where the verdict has not been rendered as of the date of this opinion.

The instruction in this case did not require the jury to be unanimous on which category of the party to a crime statute Holland violated; the error was of constitutional dimension and was not harmless beyond a reasonable doubt. Therefore, Holland's conviction must be reversed.

For purposes of retrial and for future trials in this state, we wish to make it clear that the jury need not return a special verdict indicating their factual findings. It is enough that they be instructed that they must agree on each of the elements of the crime including the nature by which the defendant was a party to a crime. We must assume that the jury will follow the instructions which it is given. An appropriate instruction to be given after the instruction on party to a crime would be: "You are further instructed that in order to return a verdict of guilty, you must unanimously agree that the defendant directly committed the crime, or you must unanimously agree that the defendant aided and abetted

in the commission of the crime, or you must unanimously agree that the defendant conspired to commit the crime."

*By the Court*—Judgment vacated and cause remanded for a new trial.

BROWN, J. (Dissenting). I agree with the majority that the trial court erred in failing to instruct the jury that in order to find the defendant guilty they all had to agree that the defendant was guilty of at least one of the categories of party to a crime. However, I disagree with the majority that this error requires a reversal.

The unanimity requirement announced in this opinion is a new constitutional rule. While generally the person raising the issue for the first time is entitled to the benefit of the new rule, even though his trial was held prior to the court's holding, he is not entitled to a reversal and new trial if the error was harmless. *Allison v. State,* 62 Wis.2d 14, 29, 214 N.W.2d 437, 445 (1974); *Jones v. State,* 37 Wis.2d 56, 69a–69b, 155 N.W.2d 571, 572 (1968). I believe the error as applied to this case was harmless and therefore Holland's conviction should be affirmed.

A review of the evidence presented at trial by both the State's witnesses and the defendant's witnesses shows that there is credible evidence to support only one category of the party to a crime statute—aiding and abetting. The only evidence presented to the jury that could have possibly supported a finding that Holland directly committed the murder was the testimony of Hoppe. He testified that Holland had gone into the bedroom where Westbrook was lying and suffocated her. However, Hoppe's testimony was contradicted by every other witness including the State's main witness, Ms. Jans. Based on the evidence submitted on the theory of direct commission, no reasonable jury could have concluded that

Holland directly committed the murder. Therefore, the evidence was insufficient to support a jury verdict of guilty on direct commission.

The evidence was also insufficient to support a verdict of conspiracy. In this state, a person may be found guilty of party to a crime (conspiracy) if he agreed to commit a crime and the crime charged, while not the crime he agreed to commit, was the natural and probable consequence of the crime he agreed to commit. Wis JI —Criminal, Part I, 400. However, before the defendant may be found guilty under these circumstances, the State must prove that the crime charged was the natural and probable consequence. *Turner v. State,* 76 Wis.2d 1, 10–13, 250 N.W.2d 706, 711–12 (1977).

To prove that second degree murder was the natural and probable consequence of sexual perversion, the State had to prove that the conduct which Hoppe and Holland agreed to commit was so imminently dangerous that they could or should have known that death would result. *Turner v. State,* 76 Wis.2d at 10–14, 250 N.W.2d at 711–13. Thus, where the State claims that the defendant is liable for the crime charged (murder) because he conspired to commit another crime (sexual perversion) which resulted in death, they must prove that the conduct the defendant agreed to commit was so imminently dangerous that death was a foreseeable result.

The evidence in this case was insufficient to support a jury finding that the conduct Holland agreed to commit was so imminently dangerous that death was a foreseeable result. The State presented no evidence whatsoever that would tend to show that Holland had any reason to believe that Hoppe would go far beyond the acts of sexual perversion and strangle his victim. Nor is the act of sexual perversion itself so imminently dangerous to life that death is a foreseeable result. While in some instances other facts known to the defendant may make

sexual perversion imminently dangerous, such as the tender age of the victim and the physical characteristics of the victim and assailant, *Turner v. State,* 76 Wis.2d at 13, 250 N.W.2d at 713, none of these factors were present here. In *Turner* the victim was nine years old. Here the victims were full grown adults. While any form of sexual perversion may in some sense be denominated dangerous, it is not inherently and consciously dangerous to life unless other facts known to the defendant make it imminently dangerous to that victim. There were no facts known to Holland that made his conduct imminently dangerous to the life of the victims. As the court stated in *Hogan v. State,* 36 Wis. 226, 246 (1874), cited with approval in *Seidler v. State,* 64 Wis.2d 456, 462, 219 N.W.2d 320, 324 (1974), and *Turner v. State,* 76 Wis.2d at 11, 250 N.W.2d at 712:

> The first condition of the statute is, that the act producing death shall be imminently dangerous to others. It has been said that every act producing death must be thus dangerous. Perhaps this is literally true. But the statute does not go on fortuitous or latent danger, but on essential and apparent danger, of the act producing death. The act must be inherently and consciously dangerous to life, not such as casually produces death by misadventure. It must be dangerous in and of itself, as committed and when committed, whether death follow it or not.

The most the evidence in this case shows is that the death of Westbrook, at least as to Holland's liability, was a result of misadventure. He had no knowledge of any facts about Hoppe or their victims which would render his conduct of agreeing to commit sexual perversion in and of itself imminently dangerous to life. The State, therefore, failed to prove any facts which, if believed, would allow a reasonable jury to conclude that

murder was the natural and probable consequence of Holland's agreement to commit sexual perversion.

Since no reasonable jury could have concluded that Holland directly committed the murder nor could they conclude that murder was the natural and probable consequence of Holland's agreement to commit sexual perversion, the jury's verdict is only sustainable on the aiding and abetting category of party to a crime. The evidence presented in this case on aiding and abetting was sufficient to support the jury's verdict.

Ms. Jans testified that after she and Holland heard Ms. Westbook screaming for help, Holland held her on the couch and prevented her from aiding her friend. This testimony was uncontradicted by Holland. Also, Ms. Jans testified that after Hoppe had come out of the bedroom, he said that Ms. Jans would have to be killed because she had seen too much. There was a knock on the door and Holland prevented Ms. Jans from leaving to get help. Ms. Jans also testified that Holland attempted to divert the attention of the person at the front door thus preventing help for Ms. Westbrook. These facts, if believed by the jury, are sufficient to support a finding of guilty of party to a crime (aiding and abetting).

Since the verdict in this case is only sustainable on a finding of guilty of party to a crime (aiding and abetting), the trial court's failure to instruct on unanimity was harmless. There was only one category any reasonable jury could have agreed upon—aiding and abetting. We must assume that the jury was reasonable, followed the instructions of the court, and returned its verdict based on the credible evidence submitted to it. We are not permitted to go behind the jury verdict if it is supported by credible evidence. *Peters v. State,* 70 Wis.2d 22, 233 N.W.2d 420 (1975) ; *State v. Shaw,* 58 Wis.2d 25, 205 N.W.2d 132 (1973) ; *State v. Johnson,* 11 Wis.2d 130, 104 N.W.2d 379 (1960). Thus, we must assume that the jury returned a verdict of guilty of party

to a crime (aiding and abetting). Since they could not have reasonably believed the defendant was guilty of either of the other two categories, and they were instructed that they had to return a unanimous verdict, they were unanimous. They all agreed that Holland was guilty of second degree murder, party to a crime, aiding and abetting.